UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____

VERSA POINTE LLC, a Delaware
limited liability company
authorized to do business in Florida,

      Plaintiff,

vs.

RANCH COLONY PROPERTY
OWNERS' ASSOCIATION, INC.,
a Florida not-for-profit corporation;
Beth Asplundh; Byron Russell;
Erik Conroy; Harry Glen; Peter
Colavecchio; Troy Zielasko;
and Warren Aplin,

      Defendants.
_____/

## **COMPLAINT**

### Introduction

Plaintiff, Versa Pointe LLC ("Versa Pointe"), files this action under the Fair Housing Act of 1968 ("FHA"), as amended by the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. §3601 *et seq.* (collectively, the "FHA") and Florida law seeking declaratory, injunctive, and monetary relief against Defendants, the Ranch Colony Property Owners' Association, Inc. ("Ranch Colony" or "POA"), and the Board of Directors thereof, Beth Asplundh, Byron Russell, Erik Conroy, Harry Glen, Peter Colavecchio, Troy Zielasko, and Warren Aplin (collectively the "Board"), and states:

**I.**     **Introduction**

1

1. Plaintiff Versa Pointe intends to provide housing to disabled tenants—an FHA protected class--in a dwelling in Ranch Estates, a secluded, affluent area in Ranch Colony, Southern Martin County, Florida.

2. The facts are simple. Versa Pointe is a housing provider for high-end executives and professionals in recovery from alcohol and other substance use disorders in Martin County, with a Jupiter, Florida mailing and physical address of 1901 S.E. Ranch Road (the "Home").

3. It provides no licensable substance use disorder treatment services on that site or anywhere else.

4. On September 1, 2023, Versa Pointe entered a one-year lease with the owners of the Home, with options to renew.

5. The Home is located in Ranch Estates, which is part of the Ranch Colony Property Owners' Association, Inc., and subject to the rules in effect on that date.

6. When Versa Pointe entered into the lease, and for at least the nearly five decades of the Ranch Colony's existence, Ranch Colony had no restrictions requiring POA board approval of residents, owners, or lessees.

7. Upon learning that Versa Pointe intended to house residents with disabilities, the Defendants adopted a new bylaw requiring POA board approval of residents, owners, or lessees.

8. Versa Pointe sues the Defendants under the FHA to prevent them: 1) from interfering with Versa Pointe's operation and the occupancy of the dwelling by disabled persons recovering from alcoholism and other substance use disorders; 2) from retaliating against Versa Pointe by enacting and enforcing bylaw changes to require POA approval of leases/lessees and residents prior to occupancy when no requirement existed before the Defendants learned that Versa Pointe's residents were disabled. Additionally, this action seeks an Order: 3) requiring Ranch

2

Colony to grant Versa Pointe a reasonable accommodation; and 4) under Florida law declaring that the rental is a residential use—and not a business or "mercantile" use.

## II. Jurisdiction and Venue

9. This action is brought pursuant to the FHA and Florida law.

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a), 1667, and 1391(b)(2).

11. Venue lies in the Southern District of Florida pursuant to 28 U.S.C. § 1391 as all acts complained of occurred within this District.

## III. Parties

12. Plaintiff Versa Pointe LLC is a Delaware limited liability company authorized to do business in the State of Florida, and is otherwise *sui juris*.

13. Defendant Ranch Colony Property Owners' Association, Inc. (hereinafter "Ranch Colony") is a Florida not-for-profit corporation, doing business in Palm Beach County, Florida, and operates a property owners association that is an executive body with authority and control over the actions of homes within Ranch Estates, including the Home.

14. Defendant Beth Asplundh is a member of the Board and is sued in her individual capacity.

15. Defendant Byron Russell is a member of the Board and is sued in his individual capacity.

16. Defendant Erik Conroy is a member of the Board and is sued in his individual capacity.

17. Defendant Harry Glen is a member of the Board and is sued in his individual capacity.

18. Defendant Peter Colavecchio is a member of the Board and is sued in his individual capacity.

19. Defendant Troy Zielasko is a member of the Board and is sued in his individual capacity.

20. Defendant Warren Aplin is a member of the Board and is sued in his individual capacity.

## IV. The Home

21. Plaintiff's housing is at 1901 S.E. Ranch Road, Jupiter, Florida 33478, a secluded high-end home on a 20-acre lot in Martin County, Florida. Here is the front of the home:



22. It is secluded and set back from other 20-acre-lot homes in Ranch Estates:



## VI. The Controversy

23. On September 1, 2023, Versa Pointe entered into a lease with the owners of the home at 1901 S.E. Ranch Road.

24. On October 17, 2023, after learning that Versa Pointe's residents were persons with disabilities, the Defendants issued a cease-and-desist letter to Versa Pointe:

> **CEASE AND DESIST ALL NON-AGRICULTURAL AND/OR MERCANTILE OPERATIONS AND ACTIVITY AT THE PROPERTY**
> Section 4 of the Ranch Colony Permitted Uses and Restrictions and Deed of Restriction reads in part:
> *Lands shall only be used for agricultural purposes ...* and goes on to read...*No place of public entertainment, hotel, dance hall, public garage, filling station, restaurant, manufacturing or other mercantile establishment can be established or maintained on any of the parcels*,[…]

(italics added) (Exhibit 1).

25. Notably, "single family houses" are referenced later in Section 4, contemplating residential uses.

26. Further, there is no explicit prohibition against single family uses in the Ranch Colony Permitted Uses and Restrictions and Deed of Restriction.

27. Sometime between September 1, 2023, and October 31, 2023 (the date in October 2023 that the bylaw amendment was adopted is blank), the Defendants learned that Versa Pointe intended to house persons with disabilities and adopted, for the first time in the POA's 45-year history, a bylaw requiring that home sales and leases and the parties and occupants thereto, be approved by the POA Board in advance.

28. On October 20, 2023, in an attempt to amicably resolve the dispute manufactured by the Defendants, Versa Pointe made a request for a reasonable accommodation to allow the operation of a Certified Recovery Residence at the Home.

29. On November 9, 2023, the Defendants responded, claiming that the request failed "to articulate with any specificity what the requested accommodation is and/or whether the accommodation is necessary" even though it did.

5

30. On November 27, 2023, Versa Pointe replied:

Dear Mr. Doorakian:

This is in response to your letter dated November 9, 2023 requesting:

> specific details as to what the requested accommodation is and how it is necessary to alleviate the effects of the alleged handicap. The Association will then be able to conduct a meaningful review to determine if the requested accommodation is required by law. Thank you in advance for your attention to this matter.

While we believe that the accommodations we requested were obvious from our letter dated October 30, 2023 and email dated October 30, 2023, here they are again, stated simply:

> 1. Treat my client's residents and their use as a single family residential use; and
> 2. Treat my client's residents and their use as a non-business residential use.[1]

*See* October 30, 2023 letter at 2-4.

The necessity of the requested accommodations and how they alleviate the effects of the disability are set forth on our October 30, 2023 letter at 4-5. Further, as found by Judge Middlebrooks in *Jeffrey O. v. City of Boca Raton*, 511 F.Supp.2d 1339 (S.D.Fla.2007):

> Plaintiffs' expert, Riley Regan, testified as to the impact addiction has on one's life, not just during active addiction, but also for the rest of his or her life. **It is common for recovering individuals to need to live in an environment that is drug and alcohol free in order to further their recovery. Regan stated that without drug testing there is no way for everyone to be sure that the living environment is drug and alcohol free.** This testimony was also supported by the recovering individuals who testified that drug testing kept them motivated to stay sober and kept them safe. **Regan also testified about the need for recovering individuals not to live alone because loneliness can trigger a relapse and living with other individuals imposes an accountability to other people.**

---

[1] "Almost every real estate transaction, including sales and rentals, ha[s] a business aspect to [it]. Regardless, the fact that my client charges rent does not make the requested use a business one. *Smith & Lee Assocs., Inc. v. City of Taylor, Michigan*, 13 F.3d 920, 930 (6th Cir. 1993) ("the handicapped may have little choice but to live in a commercial home if they desire to live in a residential neighborhood. To provide the handicapped with equal housing opportunities, the City must make the necessary 'reasonable accommodations.'"); *Groome Resources Ltd. v. Parish of Jefferson*, 234 F.3d 192, 202 (5th Cir. 2001) ("the disabled were not able to live safely and independently without organized, and sometimes commercial, group homes like the one at issue."); *Avalon Residential Care Homes, Inc. v. City of Dallas*, 130 F. Supp. 2d 833, 841 n.11 (N.D. Tex. 2000) ("commercial group homes may be the only way for disabled individuals to live in a residential community.")."

6

> **This testimony was in line with that of the recovering individuals who testified where they described loneliness and boredom as possible triggers to relapses.** This is not to say that some of the individuals wanted to live alone and did live alone, but many acknowledged the benefits they had and could reap from living with other recovering individuals.
>
> *Id*. at 1344 (emphasis added).
>
> Lastly, please treat this and my client's previous communications as complaints under the Fair Housing Act and protected under its anti-retaliation provision. *See* 42 U.S.C. § 3617 and 24 C.F.R. § 100.400(c)(5) ("Retaliating against any person because that person has made a complaint ... under the Fair Housing Act.").
>
> Sincerely,
> JEFFREY LYNNE

(Exhibit 2).

31.  In response, the Defendants on December 15, 2023 made an invasive and unnecessary request for further information, Exhibit 3, which Versa Pointe responded and objected to in part on January 2, 2024. (Exhibit 4.)

32.  The accommodation requested was reasonable and would have been necessary to afford Versa Pointe's residents an equal opportunity to housing at the Home.

33.  It is unlawful to make an inquiry as to the nature or severity of a handicap of a person with a disability beyond that which is necessary to afford Versa Pointe and its residents a reasonable accommodation at the Home.

34.  Housing providers such as Versa Pointe need not provide individualized evidence of the actual disability of their residents. Instead, they can satisfy the actual disability prong on a collective basis by demonstrating that they serve or intend to serve individuals with actual disabilities, which Versa Pointe has done.

35.  As a result of the Defendants' unreasonable inquiries, Versa Pointe was subject to discrimination in the terms and conditions of the services and facilities of the POA, by limiting the full and equal enjoyment of the POA grounds.

36. To date, Ranch Colony has not retracted its cease-and-desist letter.

37. On or about January 8, 2024, the following sign was erected by Defendants or with their consent at the foot of the driveway to Versa Pointe's Home with a surveillance camera aimed at the Home:



### Damages

38. As a result of the Defendants' actions, Plaintiff has suffered damages, including frustration of mission, diversion of resources, and lost profits.

### Injunctive and Declaratory Relief

39. As to Plaintiff's claims for declaratory relief, there is a bona fide dispute between the parties; Plaintiff has a justiciable question as to the existence or non-existence of some right, status, immunity, power or privilege, or as to some fact upon which the existence of such right, status, immunity, power or privilege does or may depend; Plaintiff is in doubt as to its rights, status, immunity, power or privilege; and there is a bona fide, actual, present need for the declaration.

40. As to Plaintiff's claims for injunctive relief, Plaintiff will succeed on the merits; it will suffer irreparable injury unless the injunction issues; the threatened injury to Plaintiff and its residents

outweighs whatever damage the proposed injunction may cause the opposing party; and, if issued, the injunction would not be adverse to the public interest.

## FHA Statutory and Regulatory Framework

41. In 1988, Congress amended the FHA, 42 U.S.C. § 3601 *et seq.*, to extend the guarantee of fair housing to handicapped individuals. Congress also authorized the Secretary of HUD to promulgate regulations to implement the FHA. 42 U.S.C. § 3614a.

42. Under the FHA, the term "handicap" means, with respect to a person, a "physical or mental impairment which substantially limits one or more of such person's major life activities, a record of such an impairment, or being regarded as having such an impairment." 42 U.S.C. § 3602(h). The term "physical or mental impairment" includes, but is not limited to, "alcoholism" and "drug addiction (other than addiction caused by current, illegal use of a controlled substance)." 24 C.F.R. § 100.201.

43. Under the FHA, it is unlawful to discriminate against or otherwise make unavailable or deny a dwelling to any buyer or renter because of a handicap of that buyer, renter, or person residing in or intending to reside in that dwelling after it is sold, rented, or made available. 42 U.S.C. § 3604(f)(1).

44. The FHA further provides that it is unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of the handicap of that person or persons residing in or intending to reside in that dwelling after it is sold, rented, or made available. 42 U.S.C. § 3604(f)(2).

45. The federal regulations implementing the FHA specifically prohibit, as a discriminatory activity, providing municipal services differently because of handicap. 24 C.F.R. § 100.70 (d)(4).

46. The federal regulations further make it unlawful, because of handicap, "to restrict or attempt to restrict the choices of a person by word or conduct in connection with seeking, negotiating for, buying or renting a dwelling so as to . . . discourage or obstruct choices in a community, neighborhood or development." 24 C.F.R. § 100.70(a).

47. The FHA, as amended, is to be interpreted broadly to effectuate its purposes. Indeed, the FHA, as amended, states an extremely broad governmental policy to provide fair housing, and this mandate includes preventing POAs and homeowner associations from discriminating based on disability. Congress intended § 3604 to reach a broad range of activities that have the effect of denying housing opportunities to a member of a protected class. When Congress amended it in 1988, it intended that section to reach not only actors who were directly involved in the real estate business, but also actors who directly affect the availability of housing.

**Count I: Intentional Discrimination Claims under the FHA against the Defendants**

48. Plaintiff incorporates by reference paragraphs 1 through 47 above as though fully set out herein.

49. Versa Pointe's housing, described above, constitutes a "dwelling" within the meaning of the FHA.

50. Ranch Colony's conduct described above constitutes discrimination under the FHA. Ranch Colony has effectively made housing unavailable to Plaintiff's prospective residents. These acts were undertaken with the intent to discriminate against, and had the effect of

discriminating against, disabled residents and those who provide services to them, namely Plaintiff and its prospective residents.

51.     As a result of Ranch Colony's discriminatory reactions to the Plaintiff's proposed housing and proposed financing of such housing, and the illegal behavior that resulted from that reaction, Plaintiff has expended time and financial resources and has lost the opportunity to conduct its business and provide a much-needed service.

### Count II: FHA Retaliation Claims against the Defendants

52.     Plaintiff incorporates by reference paragraphs 1 through 47 and 49 above as though fully set out herein.

53.     The Defendants' issuance of the cease-and-desist letter, its adoption of the new bylaw after nearly five decades with no such bylaw requiring POA board approval of residents, owners, or lessees/tenants, its request for unnecessary and invasive information, and its erection of a large "Sheriff Alert" sign with a surveillance camera aimed at the Home, were done to coerce, intimidate, and threaten Versa Pointe, or interfere with its exercise or enjoyment of, or on account of its having exercised or enjoyed, or on account of its having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by the FHA. U.S.C. § 3617 and 24 C.F.R. § 100.400(c)(5).

### Count III:  FHA Reasonable Accommodation Claims against the Defendants

54.     Plaintiff incorporates by reference paragraphs 1 through 47 and 49 above as though fully set out herein.

55.     The duty under the FHA to accommodate was or should have been obvious to Ranch Colony when it issued the cease-and-desist letter and intentionally adopted a new bylaw requiring POA board approval of residents, owners, or lessees/tenants.

56. In addition, after Versa Pointe made a written request for accommodation and replied to the Defendants' response thereto, the Defendants made an invasive and unnecessary request for further information, effectively denying Versa Pointe's written accommodation request. Further, on or about January 8, 2024, the Defendants erected or allowed to be erected a large "Sheriff Alert" sign with a surveillance camera aimed at the Home.

57. These actions, combined with the Defendants' further requests for invasive and unnecessary information, made futile any further engagement in an interactive process for accommodation, and constitute a constructive if not an actual denial of the accommodation request.

**Count IV: Declaratory Judgment Claim under Florida law against the Defendants**

58. Plaintiff incorporates by reference paragraphs 1 through 39 above as though fully set out herein.

59. Versa Pointe has a leasehold property interest in the Home.

60. A present controversy exists between Versa Pointe on the one hand, and the Defendants on the other hand, regarding whether Section 4 of the Ranch Colony Permitted Uses and Restrictions and Deed of Restriction prohibits residential uses such as the one intended by Versa Pointe. (Exhibit 5).

61. The declaration sought by Versa Pointe and its residents deals with a present, ascertainable state of facts and a present and ongoing controversy referable to those facts.

62. Section 86.011, Fla. Stat. authorizes courts to issue declaratory relief.

**Requested Relief**

WHEREFORE, Plaintiff prays that this Court award it the following relief:

A. Enter a declaratory judgment finding that the foregoing actions of the Defendants violate the Fair Housing Act, 42 U.S.C. § 3604 *et seq.*;

  B. Enter preliminary and permanent injunctions directing the Defendants and their agents, and employees to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

  C. Order Ranch Colony to grant Plaintiff a reasonable accommodation.

  D. Enter a declaratory judgment under § 86.011, Fla. Stat. finding that nothing in Section 4 of the Ranch Colony Permitted Uses and Restrictions and Deed of Restriction prohibits residential uses such as the one intended by Versa Pointe and that even if Section 4 were susceptible to an interpretation that would preclude Versa Pointe's intended residential use, the omission of an explicit prohibition on that use in the covenants is fatal to the position advocated by it in its cease-and-desist letter in this case because to impute such a restriction would cut against the principle that such restraints are not favored and are to be strictly construed in favor of the free and unrestricted use of real property.

  E. Award Plaintiff compensatory damages for the harm it suffered as a result of the Defendants' discriminatory and dilatory practices;

  F. Award punitive damages to Plaintiff that would punish the Defendants for the willful, wanton, and reckless conduct alleged herein and that would effectively deter similar conduct in the future;

  G. Award Plaintiff its reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 3613(c)(2); and

  H. Award such other relief as this Court may deem appropriate.

Dated this 9th day of January, 2024.

Respectfully submitted,

s/ James K. Green
James K. Green, Esq.
Florida Bar No: 229466
**James K. Green, P.A.**
Flagler Center, Suite 306
501 South Flagler Drive
West Palm Beach, Florida 33401
Telephone: 561-659-2029
jkg@jameskgreenlaw.com

s/ Jeffrey Lynne
Jeffrey Lynne, Esq.
Florida Bar No.: 116556
**Beighley, Myrick, Udell, Lynne & Zeichman**
2385 Executive Center Drive, Suite 250
Boca Raton, Florida 33431
Telephone: 561-549-9036
jlynne@bmulaw.com
**Counsel for Versa Pointe LLC**